**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**VERYL DEAN CRAWFORD,**

   **Plaintiff,**

   **v.**                                              **CASE NO.  22-3084-SAC**

**(FNU) GROTE, et al.,**

   **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff filed this *pro se* civil rights case under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed *in forma pauperis*.  Plaintiff is detained at the Sedgwick County Adult Detention Facility in Wichita, Kansas ("SCADF").   On April 29, 2022, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC"), granting Plaintiff an opportunity to show good cause why this matter should not be dismissed for the reasons set forth in the MOSC. Plaintiff was also granted an opportunity to file an amended complaint to cure those deficiencies. Plaintiff has filed a Response (Doc. 5) and an Amended Complaint (Doc. 6).  This matter is before the Court for screening Plaintiff's Amended Complaint.  The Court's screening standards are set forth in the MOSC.

**I.  Nature of the Matter Before the Court**

Plaintiff's Amended Complaint sets forth the same facts alleged in his Complaint.  Those facts are set forth in detail in the MOSC.  In summary, Plaintiff alleges that Defendant Grote, a deputy at the SCADF, does not allow Plaintiff to speak freely during their conversations and therefore allegedly violates Plaintiff's First Amendment right to freedom of speech.  Plaintiff alleges that after arguing with Grote, he is placed in lockdown and his request to talk to the shift sergeant are ignored.  Plaintiff also alleges that Grote created a hostile environment by placing

all the detainees on lockdown, and that she retaliated against him by giving away Plaintiff's diabetic meat sack on two occasions.  In both instances, Plaintiff was provided with another diabetic meat sack.  Plaintiff also alleges that his due process rights were violated because he did not receive a disciplinary hearing prior to being placed on lockdown.  Plaintiff claims that this deprived him of his liberty interest in remaining in the day room.

Plaintiff names as defendants: (fnu) Grote, SCADF Deputy; and (fnu) Hinshaw, SCADF Sergeant.  Plaintiff seeks punitive damages.  (Doc. 6, at 7.)

## III. DISCUSSION

### 1. First Amendment Claims

Plaintiff claims in Count I of his Amended Complaint that Defendant Grote violated Plaintiff's First Amendment right to free speech and retaliated against Plaintiff for exercising his rights.  Plaintiff claims that Grote locked down the pod when the inmates failed to comply with Grote's announcement over the intercom for a standing headcount.  Plaintiff claims that he stated to Grote "[w]hy is it a white man can assert his 1st Amendment rights to peaceful assembly; freedom of speech; attack the U.S. Capitol; kill a Capitol Police Officer & its okey?"  Plaintiff then stated to Grote "that he didn't care if she locked down the pod because he had just spent 31 years straight in prison" and "[w]hy is it when a black man assert[s] his 1st, 5th & 14th Amendment rights, you white people feel threatened."  (Doc. 6, at 5.)  Grote then told Plaintiff to go to his room and Plaintiff told Grote to get the sergeant because Plaintiff was not locking down without a hearing.  *Id*.  Plaintiff claims that Grote called for backup and Plaintiff went to his room.  *Id*.

The Tenth Circuit has held that:

Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the

plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff has failed to show that he was engaged in a constitutionally protected activity or that the imposed restrictions violated prison regulations or that the restrictions were unconstitutional under the circumstances. In *Turner v. Falk*, the Tenth Circuit upheld the dismissal of plaintiff's retaliation claim finding in relevant part that:

> Prisons are unique. "Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison." *Gee*, 627 F.3d at 1185. "[P]risoners' rights may be restricted in ways that would raise grave First Amendment concerns outside the prison context." *Id.* at 1187 (quoting *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). "Consequently, a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts." *Id.* at 1185.

> An inmate does not have a First Amendment right to make violent, explicit, or harassing statements, at least when he has been warned not to. *See Kervin v. Barnes,* 787 F.3d 833, 835 (7th Cir.2015) (concluding that "backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected"); *Lockett v. Suardini,* 526 F.3d 866, 874 (6th Cir.2008) (holding that prisoner's characterization of hearing officer as "a foul and corrupted bitch" violated prison regulation prohibiting insolent behavior and wasn't protected by the First Amendment); *Cowans v. Warren,* 150 F.3d 910, 912 (8th Cir.1998) (concluding that prisoner disciplined for "using abusive and insulting language" in violation of prison rule failed to state claim for retaliation because he was disciplined for acts he wasn't entitled to perform); *Ustrak v. Fairman,* 781 F.2d 573, 580 (7th Cir.1986) (finding that a prison rule prohibiting "being disrespectful to any employee of the institution ... swearing, cursing, or us[ing] ... any other vulgar, abusive, insolent, threatening, or improper language" did not violate an inmate's First Amendment rights).

> As these cases illustrate, prison restrictions on inmate expression are common. Therefore, to raise a plausible claim, an inmate must allege facts showing that an imposed restriction violated prison regulations or that the restriction was unconstitutional under the circumstances. *See Gee,* 627 F.3d at 1190.

*Turner v. Falk*, 632 F. App'x 457, 460–61 (10th Cir. 2015) (unpublished); *see also Fletcher v. Schwartz*, 745 F. App'x 71, 75, n.4 (10th Cir. 2018) (unpublished) (finding that plaintiff's claim that he remained calm and did not disrupt other prisoners did not demonstrate that jail official had no legitimate basis to order him to cease arguing with her, and noting that plaintiff failed to "plead facts showing that accommodation of a prisoner's right to verbally voice such complaints, without restriction, would have no significant impact on guards and other inmates."); *see also Huff v. Mahon*, 312 F. App'x 530, 532 (4th Cir. 2009) (adopting district court's reasoning and finding that "[a]n inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments."); *Denson v. Rios*, 2019 WL 7161695, at *5 (D. Colo. Dec. 23, 2019) ("Plaintiff's comment—backtalk to a prison official—is not constitutionally protected activity.").

Because Plaintiff has failed to show a violation of his First Amendment right to freedom of speech, he has also failed to plead a plausible claim that he was retaliated against for exercising his First Amendment rights.  *See Fletcher*, 745 F. App'x at 75.

## 2. Due Process Claim

Plaintiff alleges in Count II that Defendants denied Plaintiff due process when he was placed on lockdown without a hearing.  Plaintiff claims he did not realize that Grote announced for the whole pod to lockdown after Grote called for backup regarding another detainee.

(Doc. 6, at 5.)  When Grote told Plaintiff to lockdown, he stated to her that she was continuing to create a hostile environment and then went to his room.  *Id.*  Later that evening, while the whole pod was on lockdown, Plaintiff showed Grote his pending lawsuit against her, told her he had just done 31 years in prison and there was nothing else she could do to him, and told her to "save her money up because [Plaintiff] was coming to take it."  *Id.* at 6.  This exchange resulted in Plaintiff receiving a 24-hour lockdown.

The Court found in the MOSC that Plaintiff failed to allege a due process violation.  The Court found that the Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained."  *Bell v. Wolfish*, 441 U.S. 520, 540 (1979).  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  *Id.*  "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment."  *Id.*  The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  *Id.* at 540, n.23 (citations omitted).

Plaintiff has not alleged that Defendants exaggerated their response when they locked him down after he argued with Grote or when he failed to lockdown because he did not hear the orders to lockdown.  Plaintiff has failed to allege that the restrictions are not reasonably related

to the institution's interest in maintaining jail security. Plaintiff's Amended Complaint fails to cure the deficiencies set forth in the MOSC and Plaintiff has failed to allege a plausible due process violation.

### 3. Deliberate Indifference

Plaintiff claims in Count III that Defendants were deliberately indifferent when Grote threw away or gave away Plaintiff's diabetic meat sack on two occasions.   (Doc. 6, at 6.) Plaintiff received replacement meals on both occasions.

The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims."  *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"   *Id*.   To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id*.; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).   The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of

life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.  *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id*.  It is not enough to establish that the official should have known of the risk of harm.  *Id*.

Plaintiffs' allegations regarding the delay in receiving two sack meals fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  Plaintiff fails to state an Eighth Amendment violation and his claims suggest, at most, negligence.  Claims under § 1983 may not be predicated on mere negligence. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that inmate who slipped on a pillow negligently left on a stairway by sheriff's deputy failed to allege a constitutional violation); *see also Vasquez v. Davis*, 882 F.3d 1270, 1277–78 (10th Cir. 2018) (deliberate

indifference requires more than negligence) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Plaintiff's Amended Complaint fails to cure the deficiencies set forth in the MOSC.

Plaintiff has failed to show good cause why his claims should not be dismissed for the reasons set forth in the MOSC.  The MOSC provides that "[i]f Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice."  (Doc. 4, at 10.)   Plaintiff's Amended Complaint fails to cure the deficiencies set forth in the MOSC and Plaintiff has failed to show good cause why this matter should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated June 16, 2022, in Topeka, Kansas.**

<u>**S/ Sam A. Crow**</u>
**SAM A. CROW**
**SENIOR U. S. DISTRICT JUDGE**